MARVIN, Judge.
In the first appeal of her two-year hard labor sentence by this defendant, who bargained to plead guilty to attempted obstruction of justice after being charged with obstruction of justice and possession of PCP with intent to distribute, this court remanded for resentencing, finding that the trial court should have granted defendant’s request for a hearing to allow her to rebut or explain allegations or inquiries made by the trial court about her prior criminal activity that was not mentioned in the PSI report made to the court. State v. Davis, 528 So.2d 615, 619 (La.App.2d Cir.1988), writ denied.
After the resentencing hearing, the trial court sentenced Mrs. Davis to the maximum 2V2 years at hard labor, finding that the State proved that she had engaged in the alleged criminal activity and had intentionally lied about it.
Mrs. Davis appeals, contending the increased sentence suggests vindictiveness against her for successfully attacking her first sentence because there is no evidence that she committed a crime after the first sentence was imposed. She also argues the maximum sentence is excessive because she is a first felony offender.
We affirm.
Objective information that may overcome any presumption of vindictiveness and justify an increased sentence is not limited to conduct that occurs after the original sentencing. Texas v. McCullough, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). See also State v. Rodriguez, 550 So.2d 837 (La.App.2d Cir.1989). The maximum sentence may be imposed when the reduced charge to which a defendant bargains to plead does not accurately describe that defendant’s criminal conduct. State v. Lanclos, 419 So.2d 475 (La.1982).
FIRST SENTENCE
We shall summarize the detailed facts that are recited in the original appeal.
After police stopped the vehicle of Mr. and Mrs. Davis, Mrs. Davis twice disobeyed orders to keep her hands on top of the ear. When ordered to get out of the car, she first removed and dropped on the ground a plastic bag containing cigarette rolling papers. While the officers were struggling with her husband over a bottle of liquid PCP he removed from his shirt pocket, Mrs. Davis again entered the car, removed a box of “Sherman” (ordinarily, laced with PCP) cigarettes, and ran into a nearby wooded area. One of the officers followed her and recovered the cigarettes.
The box of cigarettes that Mrs. Davis removed from the car had not been treated with PCP. Nevertheless, in her statements to the probation officer who prepared the PSI report and to the court at the first sentencing, Mrs. Davis denied having any Sherman cigarettes and maintained that she had removed only a bottle of beer from the car:
I thought they were going to arrest my husband for drinking and driving_, I *526 ran in the woods to pour the beer out. The police found some Sherman cigarettes out in the woods and they said that is what I had taken to the woods, but it was not, it was beer.
The court found her explanation implausible. Although Mrs. Davis was a first felony offender, the court found it unlikely that she would respond affirmatively to probationary treatment because she had not been honest with the probation officer or with the court about her conduct. Her criminal record consisted of a 1978 shoplifting charge that was nolle pressed and a 1986 simple assault conviction.
Mr. and Mrs. Davis have three sons. At the first sentencing, the children were in their early teens and Mrs. Davis was 32 years old. The court noted that she was a high school graduate who had worked to help support her family, and that imprisonment would impose hardship on her children.
The court deemed Mrs. Davis “just as guilty as her husband ... for possessing the ... large quantity of ... PCP” and noted that she received considerable leniency from the plea bargain, which reduced her sentencing exposure from 15 years to 2½ years.
In her appeal of the original sentence, Mrs. Davis challenged, and this court upheld, the trial court’s findings that she had not been truthful with the probation officer who prepared the PSI report, that she had not been a “good mother” because of her involvement with drugs, and that she was in constructive possession of PCP when she and her husband were stopped by police. 528 So.2d at 618.
RESENTENCING ON REMAND
The allegation at the first sentencing was that Mrs. Davis, whose nickname is Tiny, sold a PCP-laced cigarette “to Monique Jones, an undercover informant, in the presence of Officer Ray O’Quinn” on March 27, 1987, after her November 1986 arrest and before her June 1987 guilty plea. At the first sentencing, Mrs. Davis admitted that her nickname was Tiny.
At the second sentencing hearing Mrs. Davis said her nickname was “Tang.” She testified that she had known Monique Jones for about nine years. She said she was at her mother’s house when Ms. Jones came to talk to her on March 27, 1987. Mrs. Davis denied selling a PCP cigarette to Ms. Jones and claimed Ms. Jones already had such a cigarette in her possession when she arrived at the house that day. Mrs. Davis testified that upon seeing and smelling the PCP cigarette, she told Ms. Jones “she shouldn’t be having it” because Ms. Jones had recently been arrested for selling drugs.
On cross-examination, Mrs. Davis testified that she had never “sold” PCP cigarettes to Monique Jones but admitted that she had “given her some before” when her husband told her to do so. Mrs. Davis claimed her husband had had an affair with Ms. Jones.
On March 27,1987, during a drug investigation by the Metro Narcotics Unit in Oua-chita Parish, an undercover officer, Deputy O’Quinn, went to Ms. Jones’s residence in West Monroe and requested ■ some “wet daddy,” or PCP-laced cigarettes. O’Quinn testified that after Ms. Jones told him she did not have any, she made a phone call and told him that “Tiny” said she had some. O’Quinn and Ms. Jones then went to the Davis residence in Monroe. O’Quinn gave Ms. Jones $100 to purchase two PCP cigarettes. Mrs. Davis answered the door and Ms. Jones entered the house for a few minutes. When they came back outside, both of them walked to the car where O’Quinn was waiting. Ms. Jones gave O’Quinn two Sherman cigarettes wrapped in tinfoil. He described the odor of PCP on the cigarettes as “outrageous” and said there was no odor of PCP in the car before Ms. Jones returned from the Davis residence.
O’Quinn wore a hidden microphone so that his conversations with Ms. Jones could be monitored by his supervisor, Detective Carver, who had followed O’Quinn in another car. O’Quinn’s testimony was corroborated by Detective Carver, who described the odor of the cigarettes as “over *527 powering” when they were given to him by O’Quinn. Chemical analysis confirmed that the cigarettes contained PCP.
Before resentencing Mrs. Davis, the court found that she “actively engaged in the distribution of PCP-laced cigarettes after she had been arrested in November of 1986.” Mrs. Davis did not seriously contest this finding, but asked the court to consider that she had led a law-abiding life in the two years between March 1987 and the second sentencing hearing. The court imposed a sentence of 2}k years at hard labor, six months more than the original sentence.
INCREASED SENTENCE
Although there is no absolute constitutional bar to the imposition of a more severe sentence after a defendant successfully attacks his or her conviction or sentence, the record must affirmatively show the factual basis for the increased sentence to assure that it is not retaliatory or vindictive. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Wise, 425 So.2d 727 (La.1983).
The statement in Pearce that the increased sentence must be based on conduct of the defendant occurring after the original sentencing, on which Mrs. Davis rests her argument, “was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified.” Texas v. McCullough, supra, 106 S.Ct. at 980. The Supreme Court recognized that the Pearce presumption of vindictiveness may be overcome by “objective information justifying the increased sentence,” and that this information is not limited to conduct or events that occurred after the original sentencing. 106 S.Ct. at 980-981. See also State v. Rodriguez, cited supra.
The allegations of Mrs. Davis’s post-arrest criminal conduct, which she denied and which the court stated it would not consider at the first sentencing, were proved, rather than rebutted, at the second sentencing hearing. By asking the court to reconsider the exercise of its sentencing discretion, Mrs. Davis undertook the risk that additional evidence of aggravating as well as mitigating circumstances would come to light. State v. Guajardo, 428 So.2d 468 (La.1983). Her continued involvement with PCP after her .arrest, as well as her lack of truthfulness about that conduct, were legitimate sentencing considerations that objectively justified the increased sentence and overcame any presumption of vindictiveness. State v. Jenkins, 419 So.2d 463 (La.1982); Texas v. McCullough, supra.
MAXIMUM SENTENCE
Mrs. Davis argues that her sentence, the maximum for attempted obstruction of justice, is “per se improper” for a first felony offender. Because she benefited greatly from the plea bargain, which reduced her sentencing exposure from 15 to 2½ years, and because the offense to which she was allowed to plead does not adequately describe her conduct, her first felony offender status does not preclude a maximum sentence for the reduced offense. State v. Landos, supra.
Mrs. Davis’s knowing participation in illegal drug activities at the time of and after her arrest, her efforts to destroy evidence and flee from the scene when she and her husband were stopped, and her unwillingness to admit any of her criminal conduct, were properly considered by the trial court along with other pertinent sentencing factors, including the fact that she had no prior felony record and the hardship her children will suffer by her imprisonment. See and compare State v. Shelton, 545 So.2d 1285 (La.App.2d Cir.1989).
CONCLUSION
The increased sentence is objectively justified, well-articulated, and particularized to the offender and the offense. The sentence is not an abuse of the trial court’s discretion and is not grossly disproportionate to the severity of Mrs. Davis’s criminal conduct.
The sentence is AFFIRMED.